1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED

08 AUG 19 AM 10: 59

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                                    DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

KEYAUN STEVENSON,

Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

Defendant.

CASE NO. 07-CV-0736 W (NLS)

**ORDER ADOPTING REPORT
AND RECOMMENDATION
(Doc. No. 18)**

Plaintiff Keyaun Stevenson ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner" or "Defendant") determination denying him Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act. Plaintiff now moves for summary judgment reversing the Administrative Law Judge's ("ALJ") decision and ordering that payment of benefits be initiated forthwith. (Doc. No. 14.) Defendant opposes and has also filed a cross motion for summary judgment. (Doc. No. 15.)

On June 26, 2008, Magistrate Judge Nita L. Stormes ("Judge Stormes") issued a Report and Recommendation ("Report") advising this Court to grant Defendant's summary judgment motion and deny Plaintiff's motion for reversal and initiation of benefits. (Doc. No. 18.) Plaintiff timely objected to the Report. (Doc. No. 19.) The Court decides the matter on the papers submitted and without oral argument. See S.D.

07cv0736W

1  Cal. Civ. R. 7.1(d.1).  For the reasons stated below, the Court **ADOPTS** the Report,
2  **GRANTS** Defendant's summary judgment motion, and **DENIES** Plaintiff's motion for
3  reversal and initiation of benefits.

5  I.  <u>BACKGROUND</u>
6      The factual background of this case is more fully set forth in the Report and is
7  incorporated herein by reference.  (Doc. No. 18.)

9      A.  <u>Procedural History</u>
10     On March 4, 2005, Plaintiff commenced an application for SSDI benefits alleging
11 disability as of October 1, 2003.  (*Administrative Record* [hereinafter AR] 82–85.)
12 Plaintiff claimed that recurrent seizures prevented him from working.  (*Id.* at 107.)  On
13 April 20, 2005, the Commissioner determined that Plaintiff was not disabled and denied
14 him benefits.  (*Id.* at 31–35.)  On June 22, 2005, Plaintiff requested reconsideration.
15 (*Id.* at 36–38.)  On September 15, 2005, after reconsideration, the Commissioner again
16 denied Plaintiff's claim.  (*Id.* at 39–43.)
17     On November 29, 2005, Plaintiff requested an administrative hearing before an
18 ALJ.  (*Id.* at 44–46.)  On May 9, 2006, the ALJ conducted a hearing to reconsider the
19 merits of Plaintiff's application.  (<u>See</u> *id.* at 441–86.)  On June 18, 2006, the ALJ issued
20 a written decision again denying Plaintiff's application.  (*Id.* at 21–28.)  On August 15,
21 2006, Plaintiff requested an Appeals Counsel review of the ALJ's decision.  (*Id.* 16–18.)
22 On March 22, 2007, the Appeals Council denied Plaintiff's request and affirmed the
23 ALJ's decision.  (*Id.* at 10–12.)  On July 20, 2007, after setting aside its original
24 determination and considering additional information, the Appeals Council again
25 denied Plaintiff's request for review.  (*Id.* at 5–7.)  Accordingly, the ALJ's decision
26 became the Commissioner's final decision on Plaintiff's application.  (*Id.*)
27     On April 23, 2007, having exhausted all administrative remedies, Plaintiff
28 commenced this action challenging the Commissioner's final decision.  (Doc. No. 1.)

07cv0736W

1  Pending before the Court are the parties' opposing motions for summary judgment.
2  (Doc Nos. 14, 15.)

3

4  **B.**  <u>**Plaintiff's Administrative Hearing on Disabled Status**</u>

5  At the May 9, 2006 administrative hearing, the ALJ heard testimony from
6  vocational expert Gloria Lasoff ("Lasoff"), medical expert Dr. Judith Willis ("Dr.
7  Willis"), and Plaintiff.  (AR 441–86.)

8  Plaintiff testified that he last worked in February of 2005 as a retail clerk.  (*Id.* at
9  447.)  Prior to that, Plaintiff worked as a forklift operator and general laborer for various
10  retail stores and companies.  (*Id.* at 445–47.)

11  Plaintiff states that he began having petit seizures when he was twelve years old
12  and had his first grand mal seizure in January of 2003.  (*Id.* at 447.)  Plaintiff had six
13  grand mal seizures during 2003, remained seizure-free for over a year, and had eight
14  grand mal seizures in the approximately eighteen months leading up to his
15  administrative hearing.  (*Id.* at 451–53.)  Plaintiff also testified that he generally had
16  three petit seizures per day during the same period, often during work hours and
17  following periods of concentration.  (*Id.* at 453–55, 462–63.)  Of note, Plaintiff's
18  seizures continued to occur despite the fact that his seizure disorder was being treated
19  with the anti-convulsant medications Dilantin and Trileptal.  (*Id.* at 455–56.)

20  Plaintiff also apparently experienced two types of headaches: normal headaches,
21  which occurred two to three times per week; and more severe headaches—classified by
22  Plaintiff as "head pains"—which occurred after his petit seizures.  (*Id.*)  Plaintiff treated
23  his "head pains" by smoking marijuana approximately four times per week.  (*Id.* at
24  459–61.)  Additionally, Plaintiff stated that his anti-convulsant medications caused a
25  variety of side effects, including nausea, fatigue, and dizziness.  (*Id.* at 466.)  Plaintiff
26  testified that the grand mal seizures, petit seizures, headaches caused by petit seizures,
27  and medication side effects prevented him from working.  (*Id.* at 458–60, 462–63.)

28

1    The ALJ also heard testimony from Dr. Willis regarding her review of Plaintiff's

2  medical records. (*Id.* at 474–81.) Dr. Willis noted that the pattern of seizures to which

3  Plaintiff attested failed to meet the requirements of Listing 11.02 (grand mal seizures).[1]

4  (*Id.* at 474.)  Furthermore, Dr. Willis opined that Plaintiff did not suffer from petit mal

5  seizures and thus could not meet the requirements of Listing 11.03 (petit mal seizures).

6  (*Id.* at 475.)   Dr. Willis observed that Plaintiff's statements regarding the onset of

7  seizures    following    periods    of    concentration    and    his    normal    diagnostic

8  electroencephalogram ("EEG") pattern were inconsistent with an individual suffering

9  from petit mal seizures. (*Id.* at 475–76.)

10    Dr. Willis also testified that nearly every sample of Plaintiff's blood taken during

11  the relevant period showed subtherapeutic levels of anti-convulsant medication. (*Id.*

12  at 476.)  Because Plaintiff exhibited normal liver function, Dr. Willis concluded that

13  Plaintiff's   subtherapeutic   medication   levels   were   most   likely   secondary   to

14  noncompliance with the prescribed treatment regimen.[2]  (*Id.* at 476–77.)  Dr. Willis

15  also noted that the medication side effects that Plaintiff complained of were highly

16  unlikely   at   subtherapeutic   medication   levels,   and   that   Plaintiff's   marijuana   use

17  decreased the effectiveness of his medication. (*Id.* at 476–78.)

18    In response to Plaintiff's attorney's questioning, Dr. Willis testified that

19  approximately one in one-hundred patients metabolized medication more rapidly,

20  resulting in subtherapeutic medication levels without noncompliance. (*Id.* at 479.) She

21  also stated that, at therapeutic medication levels, side effects of the type Plaintiff

22  complained of were possible, albeit uncommon. (*Id.* at 481.)

23    Finally, the ALJ heard testimony from Lasoff regarding Plaintiff's ability to

24  perform work. (*Id.* at 481–85.)  Lasoff concluded from the relevant evidence that

25

---

26    [1] Unless otherwise noted, all references to "Listing" refer to the "Listing of Impairments"
27  contained at 20 C.F.R. pt. 404, subpart P, app. 1.

28    [2] "Secondary to" is a medical phrase of art meaning "caused by" or "resulting from." See
Webster's Third New International Dictionary 2050.

1   Plaintiff could not return to his prior occupation as a forklift operator. (*Id.* at 482.)
2   Under hypothetical conditions requiring avoidance of ropes, ladders, scaffolds, and
3   moderate exposure to hazards, Lasoff testified that out of 2,500 job titles in the
4   applicable grid, Plaintiff could perform approximately 1,800. (*Id.*) Lasoff gave specific
5   examples of general laborer, plastics products; counter clerk; and laundry
6   laborer—positions available in substantial numbers in both the local and national
7   economy. (*Id.* at 482–84.) Lasoff further testified that Plaintiff's ability to perform
8   these occupations would not be affected by seizure precautions requiring avoidance of
9   dangerous machinery, motor vehicles, and heights. (*Id.* at 484.) However, when the
10  ALJ modified the hypothetical to include all of the limitations claimed by
11  Plaintiff—seizures, seizure recovery periods, medication side effects, and
12  headaches—Lasoff concluded that Plaintiff would be unable to work. (*Id.*)

13
14      C.   **The ALJ's Decision**
15      After reviewing the relevant record evidence and administrative hearing
16  testimony, the ALJ concluded that Plaintiff was not entitled to SSDI benefits. (See *id.*
17  at 19–28.) The ALJ relied substantially on Dr. Willis's testimony, which indicated that
18  Plaintiff's grand mal seizures did not meet the requirements of Listing 11.02 and that
19  Plaintiff did not exhibit true petit mal seizures under Listing 11.03. (*Id.* at 24.) The
20  ALJ concurred with Dr. Willis's conclusion that Plaintiff's low medication levels were
21  secondary to noncompliance with the prescribed treatment regimen.[3] (*Id.* at 25.) The
22  ALJ also agreed with Dr. Willis's findings regarding the lack of objective evidence to
23  credit Plaintiff's allegation of medication side effects, especially given Plaintiff's
24
25

26      [3] The ALJ specifically rejected the opinion of Dr. Arthur Cardones ("Dr. Cardones"),
27  Plaintiff's treating physician, that Plaintiff was taking his medication as prescribed yet still
    exhibiting seizures. (AR at 26; see *id.* at 372.) The ALJ noted that Plaintiff's medical records
28  contained multiple comments regarding Plaintiff's noncompliance with the prescribed
    treatment regimen (e.g., *id.* at 365) and laboratory evidence of subtherapeutic medication
    levels (e.g., *id.* at 368, 370–71).

- 5 -                                        07cv0736W

1   subtherapeutic medication levels. (*Id.*) Finally, the ALJ found that Plaintiff's marijuana

2   use was a material contributing factor to his disability. (*Id.*)

3          Ultimately, the ALJ concluded that Plaintiff's "impairment-related signs,

4   symptoms, and limitations, even assuming abstinence from marijuana, [did] not satisfy

5   the durational requirements of [Listing 11.02]." (*Id.* at 25.) The ALJ further found

6   Plaintiff's testimony "concerning the intensity, duration, and limiting effects of these

7   symptoms" to be "not entirely credible," given his inconsistent statements concerning

8   the frequency of his seizures and his use of alcohol and marijuana. (*Id.* at 27.) The ALJ

9   determined that, even with his non-exertional limitations, Plaintiff was capable of

10  making a successful adjustment to remunerative employment.    (*Id.* at 27–28.)

11  Accordingly, the ALJ concluded that Plaintiff was not disabled under sections 216(I)

12  and 223(d) of the Social Security Act and denied Plaintiff SSDI benefits. (*Id.* at 27.)

13

14  II.   LEGAL STANDARD

15         A.    Review of the Magistrate Judge's Report

16         The duties of a district court in connection with a magistrate judge's report and

17  recommendation are set forth in Rule 72(b) of the Federal Rules Of Civil Procedure

18  and 28 U.S.C. § 636(b)(1). The district court "must make a de novo determination of

19  those portions of the report ... to which objection is made," and "may accept, reject, or

20  modify, in whole or in part, the findings or recommendations made by the magistrate."

21  28 U.S.C. § 636(b)(1)(c); see also United States v. Raddatz, 447 U.S. 667, 676 (1980);

22  United States v. Remsing, 874 F.2d 614, 617 (9th Cir. 1989).

23

24         B.    Review of the Commissioner's Denial of SSDI Benefits

25         Unsuccessful applicants for SSDI benefits may seek judicial review of a final

26  agency decision of the Commissioner pursuant to 42 U.S.C. § 405(g) of the Social

27  Security Act.  The scope of judicial review, however, is limited; a reviewing court will

28  disturb the Commissioner's decision only if it is not supported by substantial evidence

1  or is based on legal error. <u>See</u> 42 U.S.C. § 405(g); <u>Smolen v. Chater</u>, 80 F.3d 1273,

2  1279 (9th Cir. 1996); <u>Brawner v. Sec'y of Health and Human Servs.</u>, 839 F.2d 432, 433

3  (9th Cir. 1988). Substantial evidence means "more than a mere scintilla," but less than

4  a preponderance. <u>Sandathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997). It means

5  such relevant evidence as a reasonable mind might accept as adequate to support a

6  conclusion. <u>Id</u>. The court must consider the record as a whole, examining the evidence

7  which both supports and detracts from the ALJ's conclusions. <u>Jones v. Heckler</u>, 760

8  F.2d 993, 995 (9th Cir. 1985). If the evidence supports more than one rational

9  interpretation, the court must uphold the ALJ's decision. <u>Allen v. Heckler</u>, 749 F.2d

10  577, 579 (9th Cir. 1989).

11       A claimant is entitled to SSDI benefits if he is unable to "engage in any

12  substantial gainful activity by reason of any medically determinable physical or mental

13  impairment which can be expected to result in death or which has lasted or can be

14  expected to last for a continuous period of not less than twelve months." 42 U.S.C.

15  §§ 416(I), 423(d)(1)(A). In order for the claimant to qualify for benefits, his

16  impairment must result from "anatomical, physiological, or psychological abnormalities

17  which are demonstrable by medically acceptable clinical and laboratory diagnostic

18  techniques." 42 U.S.C. § 423(d)(3); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir.

19  1984). The impairment must be of "such severity that [claimant] is not only unable to

20  do [his] previous work but cannot, considering [his] age, education, and work

21  experience, engage in any other kind of substantial gainful work which exists in the

22  national economy." 42 U.S.C. § 423(d)(2)(A).

23

24  **III.   DISCUSSION**

25       Plaintiff's summary judgment motion raises six arguments in opposition to the

26  ALJ's decision. (<u>See</u> Pl.'s Mot. 3–25.) Plaintiff argues that (1) the ALJ erred by failing

27  to find that Plaintiff suffered from a distinct "headache disorder," (<i>id.</i> at 3–6); (2) the

28  ALJ erred in failing to consider Plaintiff's "disabling medication side effects," (<i>id.</i> at

1   6–14); (3) the ALJ failed to resolve conflicts in the record, (*id.* at 14–18); (4) the ALJ

2   erred in failing to find that Plaintiff's seizure disorder equaled Listing 11.02, (*id.* at

3   18–20); (5) the ALJ violated Plaintiff's right to due process by refusing to re-open

4   Plaintiff's prior application denial, (*id.* at 20–21); and (6) the ALJ erred in failing to

5   inquire whether Lasoff's testimony conflicted with the Dictionary of Occupational

6   Titles ("DOT"), (*id.* at 21–25).

7          For the following reasons, the Court finds that the Report correctly concluded

8   that Plaintiff is not entitled to SSDI benefits.  Accordingly, the Court will uphold the

9   ALJ's decision.

10

11   **A.   Substantial Evidence Supported the ALJ's Determination That**

12   **Plaintiff Did Not Suffer From an Independent Headache Disorder**

13          Plaintiff argues that the ALJ erred in failing to conclude that Plaintiff suffered

14   from a headache disorder independent of his seizure disorder. (*Pl.'s Mot.* 4–6.) Plaintiff

15   contends that a questionnaire executed by Dr. Cardones (AR 398) constitutes

16   substantial evidence that Plaintiff suffered severe and debilitating headaches as a side

17   effect of Plaintiff's anti-convulsant medications.  (*Pl.'s Mot.* 4; *Objections* [hereinafter

18   *Objs.*] 4.)

19          The Report agreed with Defendant and concluded that the record contained no

20   evidence of a headache disorder separate and apart from Plaintiff's seizure disorder.

21   (*Report* 14.)  Rather, the Report found that Plaintiff's severe headaches were merely

22   symptomatic of his seizure disorder. (*Id.* at 13–14.)  The Report noted that Plaintiff's

23   evidence supporting the existence of a headache disorder consisted solely of symptom

24   statements lacking any objective medical foundation. (*Id.* at 13.)  Plaintiff objects to

25   this conclusion and cites Dr. Cardones's questionnaire responses suggesting that

26   Plaintiff suffered headaches as a medication side effect. (*Objs.* 5.)

27          A five-step sequential evaluation process guides the ALJ in determining whether

28   a claimant is disabled and therefore entitled to SSDI benefits.  See 20 C.F.R.

07cv0736W

1   § 404.1520.  At the second step in the sequential evaluation process, the ALJ must
2   determine whether the claimant suffers from a sufficiently "severe" impairment or
3   combination of impairments.  Id. at § 404.1520©).  The claimant's ailment or ailments
4   must "significantly limit[] [the claimant's] physical or mental ability to do basic work
5   activities."  Id.  Although the ALJ must take all of the claimant's impairments into
6   account, the claimant bears the burden of producing relevant evidence of an
7   impairment before it is factored into the disability analysis.  See 42 U.S.C.
8   § 1382c(a)(3)(G); Macri v. Chater, 93 F.3d 540, 544–45 (9th Cir. 1996).  The
9   claimant's impairment must be capable of demonstration by medical evidence—mere
10  symptom statements do not suffice.  20 C.F.R. § 404.1508.

11       As a threshold matter, the Court notes that Dr. Cardones did not respond to the
12  questionnaire until May 26, 2006, some 20 days after Plaintiff's administrative hearing.
13  Plaintiff submitted this evidence to the Appeals Council—not to the ALJ as Plaintiff
14  seems to suggest.  (See, e.g., Objs. at 4.)  Even ignoring this mischaracterization, the
15  Court is unconvinced that Dr. Cardones's opinion constitutes substantial evidence that
16  Plaintiff suffered from an independent headache disorder.  (Id.)

17       In his testimony before the ALJ, Plaintiff complained of both normal headaches
18  and more severe "head pains."  (AR 459.)  Plaintiff testified that his "head pains"
19  occurred following petit mal seizures and prevented him from working.  (Id. at 459.)
20  The Report properly concluded, and Plaintiff appears to concede, that Plaintiff's seizure
21  disorder caused his "head pains"—they were not independent ailments.  (Report 13;
22  Objs. 3.)  Although Plaintiff contends that his "non-seizure headaches were more
23  frequent and independent of his seizure headaches," Plaintiff never testified regarding
24  the severity and duration of his non-seizure headaches.  (Objs. 3.)

25       Plaintiff directs the Court's attention to Dr. Cardones's questionnaire responses
26  in support of the proposition that Plaintiff suffered from independent and debilitating
27  headaches.  (Objs. 5.)  Dr. Cardones's questionnaire responses, solicited by Plaintiff's
28  attorney following Plaintiff's administrative hearing, suggest that Plaintiff suffered from

1 independent headaches as a medication side effect. (*AR* 398); see Saelle v. Chater, 94

2 F.3d 520, 522–23 (9th Cir. 1996) (holding that ALJ could properly attach less weight

3 to doctor's opinion letter submitted by claimant's counsel). However, Dr. Cardones's

4 responses made no mention of the severity or duration of Plaintiff's headaches. (See *AR*

5 398.) Furthermore, and as the Court will discuss in greater detail below, the ALJ

6 rejected Plaintiff's allegations of medication side effects in light of his consistently

7 subtherapeutic medication levels. (*AR* 25.)

8   Given the paucity of the evidence concerning Plaintiff's alleged independent

9 headache disorder and the medical expert's testimony contradicting Dr. Cardones's

10 questionnaire responses, the evidence in support of Plaintiff's position is far short of

11 substantial. Accordingly, the Report correctly concluded that the ALJ did not err in

12 failing to find that Plaintiff's headaches constituted a severe medical impairment, and

13 Defendant is entitled to summary judgment on this claim.

14

15   **B.** **Substantial Evidence Supported the ALJ's Decision to Reject Plaintiff's**

16    **Testimony Concerning Disabling Medication Side Effects**

17   Plaintiff contends that substantial evidence in the record supports his testimony

18 regarding disabling medication side effects. (*Pl.'s Mot.* 6.) Plaintiff asserts that the ALJ

19 failed to provide clear and convincing justifications for rejecting Plaintiff's testimony.

20 (*Id.* at 7.) Plaintiff further argues that Dr. Cardones's questionnaire responses, obtained

21 after the administrative hearing, constitute new material evidence warranting remand

22 under 42 U.S.C. § 405(g). (*Id.* at 8.) Finally, Plaintiff claims that the ALJ failed to

23 include Plaintiff's claimed medication side effects in the hypotheticals posed to Lasoff.

24 (*Id.* at 12.)

25   The Report concluded that substantial evidence supported the ALJ's decision to

26 discount Plaintiff's testimony. (*Report* 15.) Further, the Report found that Plaintiff

27 failed to establish good cause for his failure to incorporate Dr. Cardones's questionnaire

28 responses into the original administrative record. (*Id.* at 16.) Finally, the Report

1  directed Plaintiff's attention to the ALJ's fourth hypothetical, which clearly included
2  the side effects Plaintiff alleged.  (*Id.* at 17.)  Plaintiff objects to each of these
3  conclusions, arguing (1) that Dr. Willis's testimony regarding the possibility of
4  medication side effects corroborates Plaintiff's testimony; (2) that Dr. Willis's testimony
5  was "internally inconsistent and required clarification by Plaintiff's counsel;" and (3)
6  that the ALJ erred in failing to adopt the limitations contained in the fourth
7  hypothetical he posed to Lasoff.  (*Objs.* 6–11.)

8

9          1.    Rejection of Plaintiff's Side Effects Testimony
10          Before the ALJ must determine whether to credit a claimant's subjective
11  symptoms testimony , the claimant must come forward with evidence of an underlying
12  impairment consistent with his complaints.  Smolen, 80 F.3d at 1281–82.  If the
13  claimant satisfies this initial burden and no affirmative evidence exists to suggest he is
14  malingering, the ALJ must determine what weight to give the claimant's testimony.  Id.
15  at 1283–84.

16          The Ninth Circuit has consistently held that credibility determinations "are
17  functions solely of the [Commissioner]."  Allen, 749 F.2d at 801 n.1 (internal quotation
18  marks omitted).  Because the ALJ is in the best position to make credibility
19  determinations, "'[i]f the evidence can reasonably support either affirming or reversing
20  the [Commissioner's] conclusion, the court [will] not substitute its judgment for that
21  of the [Commissioner].'"  Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)
22  (quoting Flaten v. Sec'y of Health and Human Servs., 44 F.3d 1453, 1457 (9th Cir.
23  1995)).  However, when the ALJ finds testimony incredible, the ALJ must make specific
24  findings on the record and "explain what evidence u ndermines the testimony."
25  Hollohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  If the ALJ satisfies his
26  duty to make specific findings, a reviewing court will defer to those findings unless they
27  are not supported by substantial evidence.  See, e.g., Brawner, 839 F.2d at 433.

28

07cv0736W

1      Here, Plaintiff produced evidence of a seizure disorder, and no affirmative

2  evidence suggested that he was malingering.  Accordingly, the ALJ was obligated to

3  evaluate the credibility of Plaintiff's subjective symptom testimony.

4      Plaintiff's assertion that the ALJ failed to make specific findings to discount

5  Plaintiff's side effects testimony is wholly without merit.  (See, e.g., Objs. 7.)  Referring

6  to Plaintiff's symptom statements—including statements about medication side

7  effects—the ALJ concluded that "[Plaintiff's] statements concerning the intensity,

8  duration, and limiting effect of these symptoms are not entirely credible."  (AR 26–27.)

9  In reaching this conclusion, the ALJ noted that Dr. Willis "opined that [Plaintiff's]

10  alleged side effects are not generally seen in the patient population;" that, "given

11  [Plaintiff's] subtherapeutic medication levels, [Plaintiff's] alleged side effects are

12  extremely unlikely;" and that "normal laboratory studies render [Plaintiff's] allegations

13  of side effects medically improbable."  (AR 25.)  Plaintiff's assertion that these

14  statements do not constitute "specific findings" concerning the evidence undermining

15  Plaintiff's credibility is not accurate.

16      Although Plaintiff correctly observes that Dr. Willis's statement that Plaintiff's

17  alleged side effects were "extremely unlikely" does not necessarily mean that the alleged

18  side effects were non-existent, (Objs. 7), Plaintiff overlooks the fact that such a "mere

19  scintilla" of evidence is insufficient to support a finding in his favor.  Sandathe, 108 F.3d

20  at 980.  In light of Dr. Willis's testimony, the Court finds that substantial evidence

21  supported the ALJ's decision to reject Plaintiff's testimony.  See Magallanes v. Bowen,

22  881 F.2d 747, 752 (9th Cir. 1989) ("[T]he reports of consultative physicians called in

23  by the [Commissioner] may serve as substantial evidence.").

24

25      **2.**    **Materiality of Dr. Cardones's Questionnaire Responses**

26      For newly discovered evidence to warrant remand under 42 U.S.C. § 405(g), the

27  evidence must be (1) material, and (2) good cause must exist for the claimant's "failure

28  to incorporate such evidence into the record in a prior proceeding . . . ."  Evidence is

1    material "only when there is a *reasonable possibility* that the new evidence would have
2    changed the outcome of the [Commissioner's] determination had it been before him."
3    Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984)
4    (internal quotation marks omitted). And if practical obstacles prevented the claimant
5    from obtaining the evidence by the time of the administrative proceeding, the good
6    cause requirement is satisfied. Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985).

7         Plaintiff fails to demonstrate good cause for his failure to incorporate Dr.
8    Cardones's questionnaire into the record prior to Plaintiff's administrative proceeding.
9    Plaintiff contends that his counsel sought Dr. Cardones's opinion because counsel was
10   "perplexed" by Dr. Willis's testimony. (*Pl.'s Mot.* 9.) Plaintiff asserts that Dr. Willis
11   testified that Plaintiff's medication could not cause the alleged side effects at less than
12   toxic levels, whereas "common sense" indicated to the contrary. (*Objs.* 9.) Even
13   assuming that Dr. Willis's initial testimony regarding the side effects of medication
14   toxicity confused Plaintiff's counsel, (see, e.g., AR 477), the ALJ clarified the record in
15   the following exchange:

16        ALJ:  Just for clarification purpose[s], assuming the Claimaint was at a
              therapeutic level of the medications he's taking, do any of the
17            documentation or anything that you're familiar with as a
              neurologist suggest the types of side effects he's alleging—would
18            they occur with someone who was at a therapeutic level?

19        [Medical Expert]:  Oh, yes, I understand. Yes, they can.
          . . .
20
          [Medical Expert]:  But they're not common, but they can.
21

22   (AR 480–81.) Furthermore, Plaintiff fails to cite any authority suggesting that counsel's
23   confusion constitutes the type of good cause necessary to warrant remand for
24   consideration newly produced evidence. Nor does Plaintiff explain why, even though
25   Dr. Cardones had long been Plaintiff's treating physician, Dr. Cardones's treatment
26   notes contained no reference to Plaintiff's alleged medication side effects. (See
27   AR 363–72.) The totality of the circumstances simply does not establish that practical
28   obstacles prevented Plaintiff from obtaining expert side effects evidence prior to his

1  administrative proceeding .   Accordingly, the Court finds that Plaintiff has not
2  established good cause for his failure to incorporate Dr. Cardones's opinion into the
3  administrative record, thus barring remand under 42 U.S.C. § 405(g).[4]

4

5          **3.    The ALJ's Hypotheticals to Vocational Expert Lasoff**

6          The ALJ may meet the burden of showing that the claimant is not disabled from
7  substantial gainful activity by "propounding to a vocational expert a hypothetical that
8  reflects all the claimants limitations." Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir.
9  1995). The ALJ need only include those limitations supported by substantial evidence
10 in the record. Magallanes, 881 F.2d at 756–57.  The ALJ may reject restrictions
11 contained in a hypothetical, so long as he supports his decision with substantial
12 evidence. See id.

13         Plaintiff initially argued that the ALJ failed to include Plaintiff's claimed
14 medication side effects in his hypotheticals to Lasoff. (Pl.'s Mot. 12–13.) However, the
15 Report directed Plaintiff's attention to the ALJ's fourth hypothetical, which
16 incorporated all of Plaintiff's allegations, including recurring headaches and other
17 medication side effects. (Report 17; see AR 484.) Taking a different tack, Plaintiff now
18 argues that the ALJ erred by not adopting all of the limitations posed in the fourth
19 hypothetical. (Objs. 11.) However, Plaintiff overlooks the fact that the ALJ may reject
20 limitations contained in a hypothetical if those limitations are not supported by
21 substantial evidence. See Magallanes, 881 F.2d at 756–57.  As discussed in detail
22 above, substantial evidence supported the ALJ's decision to reject Plaintiff's allegations
23 of medication side effects.

24

25 ――――――――――――
26 [4] Because Plaintiff fails to establish good cause, the issue of the materiality of Dr. Cardones's questionnaire responses is moot.  At this juncture, it is sufficient to note that Dr.
27 Cardones's responses merely restate facts already before the ALJ—the possible side effects of Plaintiff's medication, the side effects Plaintiff claimed to experience, and the possibility of side
28 effects at subtoxic levels.  Accordingly, the Court is unconvinced that, had Dr. Cardones's responses been before the ALJ, the outcome of Plaintiff's administrative proceeding would have differed.

07cv0736W

1       The Report correctly concluded (1) that substantial evidence supported the

2   ALJ's rejection of Plaintiff's allegations of side effects; and (2) that Plaintiff failed to

3   establish the good cause necessary to warrant remand to consider Dr. Cardones's

4   questionnaire responses.  Furthermore, the Court finds that the ALJ properly rejected

5   the limiting side effects contained in the fourth hypothetical posed to Lasoff.

6   Accordingly, Defendant is entitled to summary judgment on these claims.

7

8      **C.**   <u>**Substantial Evidence Supported the ALJ's Resolution of Conflicts**</u>

9       Plaintiff contends that the ALJ left three conflicts in the record unresolved.  (*Pl.'s*

10  *Mot.* 14.)  Plaintiff argues that the ALJ's decision fails to establish (1) whether Plaintiff

11  suffered from petit mal seizures, (*id.* at 14); (2) whether Plaintiff complied with his

12  prescribed medication treatment regimen, (*id.* at 16); and (3) whether Plaintiff's

13  marijuana use negatively impacted the effectiveness of his medications, (*id.* at 18).

14      The Report concluded that the ALJ properly resolved all three alleged conflicts

15  in Defendant's favor.  (*Report* 17–21.)  The Report also found that new medical

16  opinions, produced by Plaintiff following his administrative proceeding, did not warrant

17  remand under 42 U.S.C. § 405(g).  (*Report* 19–21.)  Plaintiff's Objections primarily

18  challenge Judge Stormes's conclusions regarding the materiality of the newly produced

19  evidence.  (*Objs.* 14–18.)

20      "The ALJ is responsible for determining credibility[,] . . . resolving conflicts in

21  medical testimony," and resolving ambiguities.  <u>Magallanes</u>, 881 F.2d at 750.  Like

22  credibility determinations, resolving conflicts in testimony is solely within the ALJ's

23  purview.  See <u>Morgan v. Comm'r of Soc. Sec. Admin</u>, 169 F.3d 595, 599 (9th Cir.

24  1999).  Likewise, "determining whether inconsistencies are material (or are in fact

25  inconsistencies at all) . . . falls within this responsibility.  <u>Id.</u> at 603.  Although ultimate

26  responsibility for conflict resolution falls to the ALJ, he must support his findings with

27  "specific, cogent reasons."  <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).

28

07cv0736W

1    Plaintiff's claim that the ALJ erred in finding that Plaintiff's allegations of daily

2  petit mal seizures lacked merit.  In discounting the credibility of Plaintiff's testimony,

3  the ALJ explained in detail how Dr. Willis's testimony undermined Plaintiff's.  (See

4  AR 24–25.)  The ALJ referenced Plaintiff's normal EEG, and he noted that Plaintiff's

5  statements regarding seizures following periods of concentration were inconsistent with

6  a diagnosis of petit mal seizures.  (Id. at 24.)  Based on these objective factors, the ALJ

7  properly concluded that Plaintiff's testimony lacked credibility.

8    Additionally, the opinion of Dr. Michael Flink ("Dr. Flink"), submitted into the

9  record following Plaintiff's administrative proceeding, is simply  not material to

10  Plaintiff's allegation of petit mal seizures.   Although Plaintiff contends that this

11  evidence "bears directly on Plaintiff's claim of nonconvulsant epilepsy," (Pl.'s Mot. 16),

12  Dr. Flink's letter clearly states that Plaintiff suffered from "complex partial seizures with

13  occasional secondary generalization"—not petit mal seizures, (AR 400).  Accordingly,

14  Dr. Flink's opinion confirms rather than contradicts the ALJ's conclusion that Plaintiff

15  did not suffer from petit mal seizures.[5]

16    Plaintiff's argument that the ALJ erred in relying on Dr. Willis's testimony

17  regarding Plaintiff's noncompliance with the prescribed treatment regimen is similarly

18  without merit.  Plaintiff seems to assert that the ALJ did not state sufficient reasons for

19  disregarding Plaintiff's testimony that he complied with his prescribed treatment

20  regimen.  (See Pl.'s Mot. 16–17.)   However, after noting Plaintiff's consistently

21  subtherapeutic medication levels, the ALJ concurred with Dr. Willis's testimony that

22  Plaintiffs low medication levels were secondary to noncompliance.  (AR 25.)  The ALJ

23  clearly based this conclusion, in part, on the extremely low probability that Plaintiff

24

25    [5] Furthermore, the Court is unconvinced that Plaintiff has established good cause for
26  failing to incorporate Dr. Flink's opinion into the record prior to his administrative proceeding.
     Although Plaintiff asserts that good cause exists because "scheduling errors" prevented Plaintiff
27  from obtaining treatment, the Court doubts that Dr. Flink is the only neurologist in San Diego
     qualified to diagnose Plaintiff's disorder.  Moreover, considering the alleged materiality of Dr.
28  Flink's opinion, Plaintiff does not explain why he did not seek a continuance of the
     administrative proceeding pursuant to 20 C.F.R. § 404.936 in order to provide a complete
     record.

1  metabolized medication at an abnormal rate and the lack of evidence of an underlying
2  condition that might otherwise result in subtherapeutic medication levels. (*Id.*) The
3  ALJ's ultimate conclusion necessarily reflects an implicit rejection of these possibilities,
4  and accordingly, the Court finds that the ALJ sufficiently stated the evidence on which
5  he based his resolution.

6        Nor do Dr. Cardones's questionnaire responses constitute new, material evidence
7  of a conflict in the record on this issue. Dr. Cardones confirmed that a hypothetical
8  patient could "possibl[y]" be compliant with his medication yet still experience grand
9  mal seizures. (*AR* 398.) This statement confirms, rather than contradicts, Dr. Willis's
10 testimony. Dr. Willis quantified the probability that Plaintiff could be compliant yet
11 still experience seizures at approximately one percent; the ALJ simply rejected this
12 evidence as insufficient to support a finding in Plaintiff's favor. (See *AR* 25.)
13 Accordingly, no reasonable possibility exists that Dr. Cardones's relatively insubstantial
14 questionnaire responses would have changed the outcome of the ALJ's decision. See
15 Booz, 734 F.2d at 1380.

16       Finally, Dr. Flink's response to a post-administrative hearing questionnaire does
17 not contradict the ALJ's conclusion, nor does it constitute new material evidence
18 regarding the impact of Plaintiff's marijuana use on Plaintiff's anti-convulsant
19 medication's effectiveness. Dr. Flink opined that, although he was not aware of any
20 clinical studies regarding the impact of marijuana use on Dilantin, he discouraged the
21 combination regardless. (*AR* 393.) Contrary to what Plaintiff suggests, the fact that
22 Dr. Flink is unaware of any such studies does not compel the conclusion that no such
23 studies exist. Further, Plaintiff's argument that Dr. Flink discourages the combination
24 of marijuana and Dilantin because of "legal issues" is without factual basis. (*Objs.* 14.)
25 Because Dr. Flink's statement creates no conflict with Dr. Willis's testimony, no
26 reasonable possibility exists that it would have changed the outcome of Plaintiff's
27 administrative proceeding.
28

07cv0736W

1      Given that the ALJ supported his decisions with substantial evidence and

2 because Plaintiff wholly fails to create a conflict by producing new, material evidence,

3 Defendant is entitled to summary judgment on this claim.

4

5      **D.**    **The ALJ Properly Concluded That Plaintiff's Seizure Disorder Did**

6             **Not Meet Listing 11.02**

7      Plaintiff contends that the ALJ erroneously concluded that Plaintiff's seizure

8 disorder did not meet Listing 11.02. (*Pl.'s Mot.* 18–19.) The Report found that

9 substantial evidence supported the ALJ's conclusion that Plaintiff's disorder failed to

10 meet or equal listing severity. (*Report* 22.) The Report also observed that the ALJ

11 supported his decision with specific findings. (*Id.*) In his Objections, Plaintiff

12 challenges the sufficiency of the evidence supporting the ALJ's determination. (*Objs.*

13 16–17.)[6]

14      At step three in the sequential evaluation process, the ALJ must determine

15 whether a claimant's impairment meets or equals an impairment contained in the

16 Listings. 20 C.F.R. § 404.1520(d). To meet a listed impairment, the claimant "must

17 have a medically determinable impairment[] that satisfies all of the criteria in the

18 listing." 20 C.F.R. § 404.1525(d). If the claimant's impairment does not meet the

19 Listing's criteria, it may still equal the Listing if the claimant establishes symptoms,

20 signs, and laboratory findings "at least equal in severity and duration to the criteria of

21 any listed impairment." 20 C.F.R. § 1526(a). Where a claimant suffers from multiple

22 impairments, none of which meet or equal listing severity, the ALJ must evaluate the

23 collective symptoms, signs, and laboratory findings to determine whether the claimant's

24 combination of impairments meets or equals the criteria of a relevant listing. <u>See</u>

25 _____

26     [6] Additionally, Plaintiff apparently asserts in his Objections that the opinions of Drs.
Flink and Cardones constitute new, material evidence bearing on this issue. (<u>See</u> *Objs.* 16–17.)

27 As discussed above, Plaintiff has failed to establish a reasonable probability that this evidence
would have changed the outcome of his administrative proceeding, and he has not

28 demonstrated good cause for failing to incorporate this evidence into the record prior to his
administrative proceeding. Accordingly, the Court finds that remand for consideration of this
evidence is not warranted. <u>See</u> 42 U.S.C. § 405(g).

1   Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990.)  The ALJ has a duty to explain

2   how his evaluation of the relevant facts led to his ultimate conclusion.  Id.

3        In order to meet Listing 11.02, a claimant's seizure disorder must cause at least

4   one grand mal seizure per month despite at least three months of prescribed treatment.

5   20 C.F.R. pt. 404, subpart P, app. 1 § 11.02.  The ALJ must evaluate the claimant's

6   blood drug levels in conjunction with all other evidence to determine the extent of the

7   claimant's compliance with the prescribed treatment regimen.  Id. § 11.00A; see also

8   S.S.R. 87–6 ("[T]he record of anticonvulsant blood levels is required before a claim can

9   be allowed.").  "Where  documentation shows that use of alcohol or drugs affects

10   adherence to prescribed therapy or may play a role in the precipitation of seizures, this

11   must also be considered in the overall assessment of impairment level."  Id.

12        In his written decision, the ALJ made detailed findings and concluded that

13   Plaintiff's seizure disorder did not meet or equal Listing 11.02. (AR 24–25.)  The ALJ

14   noted "the nature, severity, frequency, duration, and persistence of [Plaintiff's] reported

15   seizures; the type, dosage and effectiveness of medications; the serum levels of the

16   claimant's prescribed medications; and the effects of [Plaintiff's] marijuana use." (Id.

17   at 24.)  The ALJ also observed that Plaintiff's "Dilantin levels [had] repeatedly tested

18   at subtherapeutic levels." (AR 25.)  Given his rejection of other potential causes of

19   Plaintiff's subtherapeutic medication levels, discussed at length above, the ALJ thus

20   concluded that Plaintiff failed to establish at least three months of prescribed treatment.

21   (Id.)  Given the evidence, the Court finds the ALJ's conclusion that Plaintiff's seizure

22   disorder did not meet listing severity supported by substantial evidence in the record.

23        Plaintiff directs the Court's attention to the ALJ's observation that, at the time

24   of Plaintiff's administrative hearing, "there [was] some evidence of compliance since the

25   addition of Trileptal to [Plain tiff's] regimen in January 2006." (Pl.'s Mot. 20.)

26   However, Plaintiff's own testimony contradicts the argument that this evidence

27   indicates Plaintiff's disorder met the listing criteria. (See AR 453 (testifying to less than

28   one seizure per month during period of medication compliance).)

07cv0736W

1   Nor did the ALJ err in refusing to consider Plaintiff's headaches in conjunction

2   with his seizure disorder.  Plaintiff contends that his headaches were actually a side

3   effect of his medication and should have been considered in a combined-impairment

4   medical equivalence analysis.  (*Objs.* 17.)  However, given Plaintiff's subtherapeutic

5   medication levels and the concomitantly low probability of side effects, the ALJ

6   properly discounted Plaintiff's testimony and refused to consider whether Plaintiff's

7   headaches combined with his seizure disorder to establish  medical equivalence. (*AR*

8   26–27.)

9   Accordingly, and considering the substantial and specific evidence cited by the

10   ALJ in support of his conclusion, the Court finds that Defendant is entitled to summary

11   judgment on this claim.

12

13   **E.     Plaintiff Received the Full Extent of Due Process**

14   Plaintiff contends that the ALJ violated his constitutional right to due process

15   by denying him an opportunity to be heard on his request to re-open prior application

16   denials.  (*Pl.'s Mot.* 21.)  The Report concluded that Plaintiff has failed to raise a

17   colorable constitutional claim that would vest this Court with jurisdiction to consider

18   this issue. (*Report* 23.)  Plaintiff objects to Judge Stormes's conclusion and apparently

19   argues that, although the Appeals Council said that it reviewed Plaintiff's newly

20   produced evidence, it did not actually do so, (*Objs.* 19.)

21   42 U.S.C. § 405(h) "prevent[s] judicial review of decisions of the [Commissioner]

22   save as provided in the [Social Security] Act, which provision is made in § 405(g)."

23   <u>Weinberger v. Salfi</u>, 422 U.S. 749, 757 (1975).  Section 405(g) establishes three

24   prerequisites to judicial review: "(1) a final decision of the [Commissioner] made after

25   a hearing; (2) commencement of a civil action within 60 days after the mailing of notice

26   of such decision . . . ; and (3) filing of the action in an appropriate district court . . . ."

27   <u>Id.</u> at 763–764; <u>accord</u> 42 U.S.C. § 405(g).  "[A] petition to reopen a prior final

28   decision may be denied without a hearing . . . ." <u>Califano v. Sanders</u>, 430 U.S. 99, 108

1   (1977); accord Davis v. Schweiker, 665 F.2d 934, 935 (9th Cir. 1982).  Accordingly,

2   a denial of a request to reopen is not subject to judicial review under § 405(g).

3   Califano, 430 U.S. at 108.  However, the Supreme Court has recognized a limited

4   exception to this rule for those cases which raise a "colorable constitutional claim." Id.

5   "The constitutional claims must relate to the manner or means by which the Secretary

6   decided not to reopen the prior decision, rather than to the merits of the prior decision

7   or the means by which that decision was reached." Panages v. Bowen, 871 F.2d 91, 93

8   (9th Cir. 1989).

9        Plaintiff's due process claim lacks merit.  On March 22, 2007, the Appeals

10  Council denied Plaintiff's request to re-open and affirmed the ALJ's decision.  (AR

11  10–12.) The Appeals Council subsequently chose to set aside its original determination

12  in order to consider new evidence.  (Id. at 5–7.)  This new evidence included Drs.

13  Cardones's and Flink's questionnaire responses, in addition to medical records

14  generated following Plaintiff's administrative hearing.  (Id. at 8.)  On July 20, 2007, after

15  considering this evidence, the Appeals Council "found no reason under [its] rules to

16  review the [ALJ's] decision." (Id. at 5.)  Plaintiff received the full extent of the process

17  due to him—the Appeals Council considered Plaintiff's new evidence and concluded

18  that it did not constitute new and material evidence warranting reopening of Plaintiff's

19  prior application denial under 20 C.F.R. §§ 404.988–.989.  Although Plaintiff asserts

20  that "it would appear the Appeals Council did not 'duly consider' Plaintiff's request,"

21  this argument is wholly without evidentiary support. (Objs. 19.)

22       Accordingly, because Plaintiff fails to raise a colorable constitutional claim that

23  would vest this court with subject matter jurisdiction to consider the Appeals Council's

24  denial of Plaintiff's request to re-open, Defendant is entitled to summary judgment on

25  this claim.

26  ///

27  ///

28  ///

- 21 -

1    **F.    The ALJ's Failure to Inquire on the Record Whether Lasoff's**
2    **Testimony Conflicted With the DOT was Harmless Error**

3    Plaintiff argues that the ALJ erred by failing to inquire on the record whether
4    Lasoff's testimony was consistent with the DOT, as required by S.S.R. 00-4p. (*Pl.'s Mot.*
5    22.) The Report concluded that Lasoff's testimony did not conflict with the DOT, and
6    thus, the ALJ's error was harmless under controlling Ninth Circuit precedent and thus
7    did not justify reversal. (*Report* 26.)  Plaintiff objects to this conclusion, arguing that
8    the DOT description of the positions the ALJ concluded Plaintiff could perform conflict
9    with Plaintiff's functional limitations. (*Objs.* 19.)

10    At the fifth step in the sequential evaluation process, the burden shifts to the ALJ
11    to demonstrate that the claimant can make an adjustment to other work existing in
12    significant numbers in the national economy. See 20 C.F.R. § 404.1520(f).  If the
13    claimant can adjust to other work, the ALJ will find that the claimant is not disabled.
14    Id.  The ALJ may meet his burden at this step by propounding a hypothetical reflecting
15    all of the claimant's limitations to a vocational expert.  Roberts, 66 F.3d at 184.  In
16    determining whether work exists in significant numbers in the national economy, the
17    Commissioner takes administrative notice "of reliable job information from various
18    governmental . . . publications," including the DOT. 20 C.F.R. § 404.1566(d).  When
19    relying on the testimony of a vocational expert, the ALJ "has an affirmative
20    responsibility to ask about any possible conflict between that . . . evidence and
21    information provided in the DOT." S.S.R. 00–4p.  However, if no conflict exists
22    between the vocational expert's testimony and the DOT, the ALJ's failure to inquire
23    does not constitute reversible error.  Massachi v. Astrue, 486 F.3d 1154 n.19 (9th Cir.
24    2007).

25    Although Plaintiff correctly points out that the ALJ failed to inquire whether
26    Lasoff's testimony conflicted with the DOT, the Court is convinced that this error was
27    harmless.  Lasoff testified that, while Plaintiff could not return to his previous position
28    as a forklift operator, he could capably function as a laundry laborer, counter clerk, or

07cv0736W

1   plastic products assembler—all positions available in substantial number in both the

2   national and local economies.   (AR 482–83.)   Although Plaintiff argues that

3   S.S.R. 00–4p required the ALJ to inquire whether Lasoff's testimony conflicted with the

4   DOT, Plaintiff does not argue that Lasoff's testimony did in fact conflict with the DOT.

5   (See Pl.'s Mot. 21–24.)   A review of the DOT job descriptions confirms that no such

6   conflict exists.   (See Def.'s Mot. Ex. A); 1 Dep't of Labor, <u>Dictionary of Occupational</u>

7   <u>Titles</u> §§ 249.366–010, 361.687–018; 2 <u>Id.</u> § 754.687–010.

8       Plaintiff also now contends that the DOT descriptions of these positions conflict

9   with Plaintiff's functional limitations.   (Objs. 19.)   However, the Court notes that

10   Plaintiff's assertion that these positions "require work around potentially dangerous

11   machines and hazards" lacks support.   (Id.)   Plaintiff fails to explain how his seizure

12   disorder prevents him from, for example, "load[ing] film into equipment that

13   automatically processes film." 1 Dep't of Labor, <u>supra</u>, § 249.366–010.

14       The Court concludes that the evidence that Lasoff provided was entirely

15   consistent with the DOT and Plaintiff's functional limitations.   Accordingly, the ALJ's

16   failure to inquire constitutes harmless error.   <u>Massachi</u>, 486 F.3d at 1154 n.19.

17   Defendant is entitled to summary judgment on this claim.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1    IV.   CONCLUSION AND ORDER

2         For the reasons stated in the Report, which are incorporated herein by reference,

3    the Court **GRANTS** Defendant's motion for summary judgment (Doc. No. 15) and

4    **DENIES** Plaintiff's motions for reversal (Doc No. 14).  The clerk of court shall enter

5    judgment in Defendant's favor and close the district court case file.

6

7         **IT IS SO ORDERED**

8

9

10   **DATE: August 15, 2008**

11                                          HON. THOMAS J. WHELAN
                                            United States District Court
12                                          Southern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 24 -                                      07cv0736W